**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABDO HIZAM | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. _____ |
| | ) |
| Hilary Clinton, Secretary of State, UNITED | ) |
| STATES DEPARTMENT OF STATE, | ) **COMPLAINT** |
| UNITED STATES OF AMERICA; UNITED | ) |
| STATES DEPARTMENT OF STATE | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

## PRELIMINARY STATEMENT

1.     This is an action seeking a declaratory judgment for Plaintiff affirming his status as a national of the United States pursuant to 8 U.S.C.A. § 1503 [INA § 360(a)]. This Court may issue such a declaration following a denial of rights and privileges of a national by any department or independent agency.  Plaintiff challenges the wrongful revocation of documents proving his United States Citizenship by Defendants, seeks injunctive relief against their deprivation, and seeks a declaration that his citizenship cannot be revoked absent compliance with 8 U.S.C. § 1481 or 8 U.S.C. § 1483.

2.     Plaintiff ABDO ALI YAHYA HIZAM has lived in the United States for over twenty-one years as a citizen. In February, 1990, upon determining Plaintiff's acquisition of citizenship at birth, the Department of State issued him a Consular Report of Birth Abroad (CRBA) and a valid United States passport. The Department of State renewed

1

plaintiff's passport in 1996, when he was fifteen years old and again in 2001, when he was twenty years old.

3.    Plaintiff was raised in Dearborn, Michigan and went to elementary school, middle school and high school there. He then attended college in Dearborn at Davenport University, working as a student to support himself, financially.  After graduating from college, Plaintiff worked for two years in Michigan and for a year in upstate New York before moving to his current home in the Bronx, New York, where he now operates two small businesses with his brothers. He also enrolled in an M.B.A. program at Mercy College in 2010. He currently lives with his younger brothers, all of whom are United States citizens, and is the primary caretaker for his eleven year-old brother, B. H.

4.    In April 2011, the Department of State sent Plaintiff three letters which threw his life into confusion. These letters stated the Department's opinion that it had committed an error in calculating the physical presence requirement for Plaintiff's acquisition of citizenship at birth.  The letters state that there was no evidence of fraud on the part of Plaintiff or his father during the application for the documents. Nonetheless, the Department of State claims the authority to deprive Plaintiff of both documents more than two decades after conferring Plaintiff with citizenship.

5.    This Court has the power to rectify the uncertainty that Plaintiff currently faces on account of the Department of State's actions.   A declaration of nationality by this court as authorized by 8 U.S.C. § 1503, would allow Plaintiff to apply for and receive his

passport. This would be the first step in remedying the devastating effects that the Department of State's course of action have had on Plaintiff and in returning Plaintiff to his long-standing life as a United States citizen.

## JURISDICTION AND VENUE

6.  Jurisdiction of this court is conferred pursuant to 8 U.S.C. § 1503. This court also has jurisdiction pursuant to 28 U.S.C. 2201 and 28 U.S.C. § 1331.

7.  Venue properly lies in the Southern District of New York pursuant to 8 U.S.C. § 1503 and 28 U.S.C. § 1391, as Plaintiff currently resides in Bronx, New York.

## PARTIES

8.  Plaintiff, ABDO ALI YAHYA HIZAM, was born in Yemen on October ███ 1980. The Department of State adjudicated Plaintiff to be a U.S. Citizen under 8 U.S.C. 1401 [INA § 301(a)(7), now INA § 301(g)] on February 18, 1990 and he has lived in the United States as such since that year. He entered the United States lawfully as a citizen and has since traveled with a United States passport and enjoyed all of the implied benefits, privileges, and protections of a citizen. He lives at ████████████ Bronx, New York, ██████

9.  Defendant, HILARY RODHAM CLINTON, is named in her official capacity as the Secretary of State of the United States.  In this capacity, she is the President's chief foreign affairs adviser and carries out the President's foreign policies through the State Department and the Foreign Service of the United States. She is legally responsible for

administering plaintiff's rights and privileges as a national of the United States through the issuance of documents such as those at issue in this case. Respondent's address is U.S. Department of State, 2201 C Street NW, Washington, DC 20520.

10.    Defendant, UNITED STATES DEPARTMENT OF STATE, is a Department of the Executive Branch of the United States government responsible for the international relations of the United States. Its responsibilities include consular processing for visas and citizenship, issuing travel documents for individuals who seek entry into the United States, and serving as the representative of the United States government for individuals residing in foreign countries.

## STATEMENT OF FACTS

11.    Plaintiff, Abdo Ali Yahya Hizam was born on October ██ 1980 in Yemen. Plaintiff has resided in the United States as a citizen for over twenty years.

12.    Plaintiff's father, Ali Yahya Hizam, is a United States citizen and was a United States citizen at the time of Plaintiff's birth. Plaintiff's mother, Walaya Hamood Nagi Abdulla, was not a U.S. citizen or national at the time of Plaintiff's birth.

13.    On February 18, 1990, Plaintiff's father executed an application for a Consular Report of Birth Abroad at the United States Embassy in Yemen on behalf of Plaintiff. He provided supporting documentation for the application in the form of a birth certificate for Plaintiff, a marriage certificate for himself and Plaintiff's mother, a certificate of

naturalization, and a U.S. passport. Following the determination of his citizenship status, the Department of State issued a Consular Report of Birth Abroad and a passport (Attached as Exhibit A) to Plaintiff on February 18, 1990 at the United States embassy in Yemen.

14.     Plaintiff arrived in the United States, traveling on his United States passport, on June 22, 1990 at the age of nine.

15.     Plaintiff was raised by his maternal grandparents, Hamood Abdullah and Gowharah Abdullah, who are also U.S. citizens, in Dearborn, Michigan.

16.     After his arrival in Michigan, Plaintiff did not visit his family in Yemen for over eight years.

17.     Plaintiff completed elementary school in Dearborn, Michigan at Salina Elementary School.

18.     Plaintiff attended Stout Middle School and Edsel Ford High School in Dearborn. Throughout high school and immediately afterward, Plaintiff was employed by a local restaurant, starting as a busboy and working up to a position as Assistant Manager.

19.     In 1996, Plaintiff's grandparents applied for a renewal of his passport. Plaintiff was
        fifteen years old at this time. The Department of State renewed and issued Plaintiff's
        passport on January 9, 1996.

20.     In 2001, at the age of twenty, Plaintiff applied for a renewal of his passport. The
        Department of State renewed and issued Plaintiff's passport on May 10, 2001.

21.     In May, 2002, a year after the second renewal of his passport, Plaintiff traveled to Yemen
        and married Kifah Mohamed Hizam, a Yemeni national. Plaintiff has two children, ages
        seven and four, who currently reside in Yemen.

22.     After a five month visit to Yemen for his wedding, Plaintiff returned to the United States
        to finish college.  Plaintiff subsequently traveled to Yemen for six months in late 2003
        and early 2004 to visit his wife.

23.     In 2004, Plaintiff received a Bachelor's degree in Business from Davenport University, at
        the Dearborn, Michigan campus.

24.     After graduation Plaintiff worked at a country club and at a Home Depot in Michigan.

25.     Plaintiff visited his wife and child in Yemen for eight months in late 2006.

26.     Upon returning to the United States, Plaintiff sought employment in Newburgh, New York. Plaintiff worked various jobs over the course of two years in Newburgh.

27.     In December 2008, Plaintiff returned to Yemen for six months, again to visit his wife and two children. During his visit, Plaintiff applied for a Consular Report of Birth Abroad for his children so that he could bring his family to live with him in the United States.

28.     During this visit to Yemen, employees of the U.S. Embassy in Yemen suggested that there was some problem with Plaintiff's passport, which was withheld from Plaintiff for around two weeks.  In May 2009, after the Embassy gave back his passport, Plaintiff returned to the United States.

29.     In 2009, Plaintiff moved to New York City in order to help his younger brothers start a small business in the Bronx, New York.

30.     In October 2010, Plaintiff enrolled in a Master's of Business Administration at Mercy College in the Bronx, New York.

31.     Plaintiff currently resides in the Bronx, New York with three brothers, all of whom are United States citizens. Plaintiff is the primary caretaker for his eleven year old brother, B.H., over whom he currently holds power of attorney. This power was conferred to Plaintiff to allow him to act as B.H.'s caretaker in his father's absence.

32.     In 2009, the country of Yemen experienced episodes of violent unrest which have grown into a civil war. The continued existence of violence related to the civil war threatens the safety and wellbeing of Plaintiff's family.

33.     After Plaintiff had lived in the United States as a citizen for over twenty years as a citizen, the Department of State sent Plaintiff a letter (Attached as Exhibit B) on April 18, 2011 stating its position that Plaintiff was improperly issued his Consular Report of Birth Abroad and U.S. passport on February 18, 1990. The letter states the opinion of the Department that the documents were issued due to its own oversight in processing the application and there was no fraud on the part of Plaintiff or his father during that process.

34.     Ten days later, on April 28, 2011, the Department of State sent Plaintiff two additional letters (Attached as Exhibits C and D) one revoking his passport and another revoking his Consular Report of Birth Abroad. The letters claimed that revocation of Plaintiff's passport was authorized by provisions in § 51.62(b) of Title 22 of the U.S. Code of Federal Regulations and cancellation of Plaintiff's Consular Report of Birth Abroad was authorized by provisions in § 50.7(d) of the same Title. Authority for these regulations is derived from 8 U.S.C. § 1504. These statutory and regulatory provisions did not exist at the time that Plaintiff was issued his Consular Report of Birth Abroad.

35.     On May 19, 2011, Plaintiff surrendered his passport and Consular Report of Birth Abroad to the Department of State.

36.    After receiving the Department of State's letters, Plaintiff withdrew from his MBA program due to emotional distress and the uncertainty of his eligibility for student aid.

37.    As a result of the adverse action taken by the Department of State, Plaintiff has been left with no documentation of his legal status as a United States citizen. The revocation of his passport and CRBA constitute a denial of the rights of a citizen of the United States and he is unable to assert those rights without a declaration from this court. Plaintiff is also unable to unite his family in the United States due to the adverse action by the Department of State.

38.    At the time of the original adjudication of Plaintiff's citizenship, consular authority to adjudicate citizenship of children born outside of the United States to one U.S. citizen parent and an alien parent was derived from § 361(a)(7) of the INA [8 U.S.C. § 1401 (1990)]. The statutory scheme when Plaintiff was initially issued his passport and Consular Report of Birth Abroad granted the Department of State authority to issue documentation of this adjudication through a passport and through a "Report of Birth Abroad of a Citizen of the United States." 22 U.S.C. §§ 2705(1)–(2) (1990).

39.    On information and belief, even if Plaintiff had not met the requirements for acquisition of citizenship from his father, the consular official had a duty to inform Plaintiff's father of the possibility to petition for a visa for his son as the immediate relative of a United

States citizen. The issuance of the visa would have allowed Plaintiff to travel to the United States as a lawful permanent resident and later obtain citizenship.

40. On information and belief, at the time of the original adjudication of Plaintiff's citizenship, consular officials at the post in Yemen, had the authority to adjudicate an immediate relative petition and to issue an immigrant visa to applicants with a readily approvable petition.

41. At the time of the original adjudication of Plaintiff's citizenship, no statutory authority existed for the cancellation of a Consular Report of Birth Abroad.

42. In 1994, Congress passed the Immigration and Nationality Technical Corrections Act, Pub L. 103—416 (1994). Among several stated purposes, the Act was intended to streamline consular processing and make it easier for children born abroad to United States citizens to obtain derivative citizenship. In House Reports, Congress explained that passing the INTCA would prevent children born to Americans abroad from being denied U.S. citizenship. Congress also passed the Act to decrease the likelihood that families would remain separated by nationality and to avoid the possibility that children of United States citizens born abroad could become stateless in the absence of an adequate way for them to gain citizenship. H.R. Rep. 103—387 at 3517-18 (1994).

43.     In part to address the concerns stated above, the INTCA created a process whereby parents who did not meet residence requirements for Consular Reports of Birth Abroad could pursue citizenship for their children.

44.     In 1994, within the INTCA, Congress created authority to cancel Consular Reports of Birth Abroad through 8 U.S.C.A. § 1503 but that provision explicitly states that the cancellation of the document *does not affect the citizenship status of the document bearer*. Congress did not provide authority to cancel a Consular Record of Birth Abroad issued prior to the date of enactment of the INTCA.

45.     In 1996, Plaintiff's grandparents applied for a renewal of Plaintiff's United States passport. At the time of the application, 8 U.S.C. § 1433 provided a means for the minor children of United States citizens to obtain citizenship. Plaintiff was 15 years old and would have been eligible for citizenship under 8 U.S.C. § 1433 had the agency claimed the authority to revoke his citizenship documents. Instead, the Department of State renewed Plaintiff's passport and reaffirmed his citizenship.

## <u>CAUSES OF ACTION</u>

I.    <u>Defendants Have Wrongfully Denied Plaintiff His Rights and Privileges as a National under 8 U.S.C. § 1503</u>

46.     Plaintiff seeks a declaration of U.S. nationality from this Court to remedy a denial of rights and privileges by the Department of State pursuant to 8 U.S.C. § 1503(a). The State Department's cancellation of Plaintiff's U.S. passport and Consular Report of Birth constitute such a denial of rights or privileges.

47.    Under the authority cited for cancelling Plaintiff's documents, 8 U.S.C. §1504 and 22
C.F.R. § 50.7(d), the cancellation of a passport or Consular Report of Birth Abroad does
not affect the citizenship status of the individual bearer of the document. Therefore, the
Department of State's revocation of Plaintiff's Consular Report of Birth Abroad and U.S.
Passport has no bearing on the Court's authority to declare Plaintiff to be an American
citizen. The statutory and regulatory standards for cancellation of citizenship are
governed by 8 U.S.C. 1481 [INA § 349(a)(1-7)]. A consular official has the authority to
fill out and submit a Certificate of Loss of Nationality if and only if an individual has
committed an expatriating act with the intent to relinquish US citizenship. The burden of
proof falls on the Government to establish that such loss occurred through a
preponderance of evidence. Even if Plaintiff were a naturalized citizen and had not
acquired citizenship at birth, the process for denaturalization under 8 U.S.C.§ 1451 does
not allow for administrative revocation.

II.    <u>Defendant Lacked the Authority to Cancel Plaintiff's Documents Under 8 U.S.C. § 1504</u>

48.    In the application for CRBA, Plaintiff's father truthfully documented his years of
physical presence in the United States. The Secretary of State does not have the authority
under 8 U.S.C. § 1504 to cancel a Consular Report of Birth Abroad when the applicant
has not committed any error.

III.     8 U.S.C. § 1504 Does Not Apply Retroactively to Consular Reports of Birth Abroad

49.     At the time Plaintiff was issued his Consular Report of Birth Abroad, there was no statutory authority for the cancellation of that document. 8 U.S.C. § 1504, which was not enacted until 1994, does not operate retroactively to permit the revocation of documents issued before its enactment.

IV.     Department of State is Equitably Estopped from Taking Steps to Revoke Plaintiff's Documents Based on a New Understanding of his Citizenship Status

50.     The Department of State is estopped from revoking Mr. Hizam's passport and CRBA. Defendants' longstanding position that Plaintiff is a citizen has given him cause to rely on that his U.S. citizenship. Changes to Defendants' position will have devastating consequences for Plaintiff.

V.     This Court Has the Authority to Adjust Plaintiff's Citizenship Status *Nunc Pro Tunc*

51.     In the event that the Court concludes that citizenship can be revoked retroactively despite no fault on the part of the applicant, Plaintiff requests that the Court grant *nunc pro tunc* relief to Plaintiff. Through a *nunc pro tunc* remedy, this Court could adjudicate Plaintiff's citizenship as would have been proper in 1996 when Plaintiff, a minor in the United States living with his U.S. citizen grandparents, was eligible for citizenship under 8 U.S.C. § 1433. Alternatively, the Court could adjudicate Plaintiff's citizenship as it would have been granted had Plaintiff been awarded lawful permanent resident status in 1990 and then allowed to naturalize when he met applicable requirements.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully request that this Court:

1) Assume jurisdiction over this matter;

2) Declare that the Plaintiff is a national of the United States and entitled to all of the   rights
   and privileges of that status under law;

3) In the alternative, require the Department of State to adjudicate Plaintiff's citizenship status
   *nunc pro tunc*, granting him the status which he would have been eligible for in 1990 or
   1996 under the contemporary practices of the time;

4) Declare that the Defendant's denial of rights and privileges to the Plaintiff is unlawful;

5) Order the Defendant to immediately reissue a United States Passport and Consular Report
   of Birth to the Plaintiff;

6) Award the Plaintiff their costs and reasonable attorney's fees in this action as provided by
   the Equal Access of Justice Act 28 U.S.C. § 2412; and

7) Grant such other and further relief as this Court may deem just and proper.

Dated: October 28, 2010
       New York, New York

Respectfully submitted,

By: _____

Nancy Morawetz, Esquire, NM1193
Semuteh Freeman, Legal Intern
Kevin Terry, Legal Intern

WASHINGTON SQUARE LEGAL SERVICES, INC.
245 Sullivan Street, 5th Floor
New York, NY  10012
(212) 998-6430
nancy.morawetz@nyu.edu
*Counsel for Plaintiff*

14

**Table of Exhibits**

United States Passports...……………...……………….…………….……….Exhibit A

Letter from United States Department of State, April 18, 2011…………..…..…Exhibit B

Letter from United States Department of State, April 28, 2011………….………Exhibit C

Letter from United State Department of State, April 28, 2011……………..…...Exhibit D

**EXHIBIT A**





*The Secretary of State of the United States of America hereby requests all whom it may concern to permit the citizen/national of the United States named herein to pass without delay or hindrance and in case of need to give all lawful aid and protection.*

*Le Secrétaire d'État des États-Unis d'Amérique prie par les présentes toutes autorités compétentes de laisser passer le citoyen ou ressortissant des États-Unis titulaire du présent passeport, sans délai ni difficulté et, en cas de besoin, de lui accorder toute aide et protection légitimes.*

*El Secretario de Estado de los Estados Unidos de América por el presente solicita a las autoridades competentes permitir el paso del ciudadano o nacional de los Estados Unidos aquí nombrado, sin demora ni dificultades, y en caso de necesidad, prestarle toda la ayuda y protección lícitas.*

SIGNATURE OF BEARER/SIGNATURE DU TITULAIRE/FIRMA DEL TITULAR

**NOT VALID UNTIL SIGNED**

---

PASSPORT
PASSEPORT
PASAPORTE

**UNITED STATES OF AMERICA**

Type / Type / Tipo    Code / Code / Código    PasSport No. / No. du Passeport / No. de  Pasaporte
**P**                      USA
Surname / Nom / Apellidos
**HIZAM**
Given names / Prénoms / Nombres
**ABDO ALI**
Nationality / Nationalité / Nacionalidad
UNITED STATES OF AMERICA
Date of birth / Date de naissance / Fecha de nacimiento
██ Oct 1980
Sex / Sexe / Sexo   Place of birth / Lieu de naissance / Lugar de nacimiento
M                **YEMEN**
Date of issue / Date de délivrance / Fecha de expedición      Authority / Autorité / Autoridad
10 May 2001                                    **Charleston**
Date of expiration / Date d'expiration / Fecha de caducidad
09 May 2011
Amendments / Modifications / Enmiendas
See Page 24

P<USAHIZAM<<ABDO<ALI<<<<<<<<<<<<<<<<<<<<<<<<<
██████████USA8010270M1105094<<<<<<<<<<<<<<08



**EXHIBIT B**



United States Department of State

*Washington, D.C. 20520*

April 18, 2011

Abdo Ali Hizam

Bronx, New York

Dear Mr. Hizam:

As you know, the U.S. Embassy in Sana'a, Yemen, issued you a Consular Report of Birth Abroad of a U.S. Citizen (CRBA) and a U.S. passport on February 18, 1990.

The Department's records indicate that on June 5, 2001, the U.S. Embassy Sana'a informed your father, Ali Hizam, that you had not acquired U.S. citizenship at birth through him because he did not meet the physical presence requirement for transmission. The Department's records do not reflect whether your father ever informed you of the contents of the June 5, 2001 letter from the Department, but subsequently you were issued two additional U.S. passports: one on January 9, 1996, and one on May 10, 2001.

On January 25, 2009, you applied for CRBAs and U.S. passports for your children at the U.S. Embassy in Sana'a. At that time, the Embassy determined that your previous three passports and CRBA had been issued in error because your U.S. citizen father, Ali Hizam, did not have the statutorily required 10 years of physical presence in the United States prior to your birth in Yemen on October ███ 1980 and so was unable to transmit U.S. citizenship to you at birth.[1]   This error was evident from your CRBA

_____

[1] The law in effect as of the date of Mr. Hizam's birth, former Immigration and Nationality Act (INA) § 301(a)(7), now INA § 301(g), 8 U.S.C. 1401, provided that a U.S. citizen who was married to an alien could transmit U.S. citizenship to his or her child born abroad provided that he or she could show 10 years of physical presence in the United States prior to the birth of the child, five of which were after the age of 14. In 1986, this section was amended to require only five years of physical presence in the United States prior to the birth abroad of a child of a U.S. citizen parent an an alien, two of which were after the age of 14. However, this amendment was not retractive and so would not apply in your case.

application; there is no indication that your father fraudulently obtained citizenship documentation for you.

It is our opinion that you were issued a CRBA and three U.S. passports due to Department error; there is no evidence of fraud on your part. Unfortunately, however, the Department of State lacks authority to create a remedy that would in some way confer U.S. citizenship on anyone absent a statutory basis for doing so.

The Department of Homeland Security has sole authority with respect to administering the naturalization statutes. An attorney in this office inquired whether DHS's Bureau of U.S. Citizenship and Immigration Services, USCIS, might be able to give you sympathetic consideration, including possibly deferred action, in evaluating your options for adjusting status and eventually naturalizing as a U.S. citizen in light of the length of time you have lived in the United States believing you were a U.S. citizen. Unfortunately, because of the statutory requirements for naturalization, USCIS is not able to commit to any specific assistance. We regret that this outcome could not have been more favorable.

Should you have any questions or if we may provide further assistance, please do not hesitate to contact attorney Carol Farrand of this office at 202-736-9109 or at FarrandCE@state.gov.

Sincerely,

Edward A. Betancourt,

Director,
Office of Policy Review and Interagency Liaison

Overseas Citizens Services
Bureau of Consular Affairs

23

**EXHIBIT C**



**United States Department of State**

*Washington, D.C.* 20520

April 28, 2011

Mr. Abdo Ali Yahya Hizam

█████████████

Bronx, New York ████

Dear Mr. Hizam:

The State Department hereby informs you that it has canceled the Consular Report of Birth Abroad ("CRBA") Number ████████ issued to you in the name of Abdo Ali Yahya Hizam in error.

This action is taken in accordance with the provisions of § 50.7(d) of Title 22 of the U.S. Code of Federal Regulations, which state in pertinent part:

> § 50.7(d) – Consular Report of Birth Abroad of a Citizen of the United States of America. (d) A consular report of birth, or a certification thereof, may be canceled if it appears that such document was illegally, fraudulently, or erroneously obtained, or was created through illegality or fraud...

State Department records indicate that on February 18, 1990, your father, Ali Yahya Hizam, executed an application for a Consular Report of Birth Abroad on your behalf in the name of Abdo Ali Yahya Hizam at the U.S. Embassy in Yemen on the basis of his United States citizenship.  In support of the CRBA application, he presented a Yemeni birth certificate dated December 21, 1968, which lists you as the child, and your parents as Ali Yahya Hizam and Wilaya Hamood Nagi Abdulla.  Also submitted was a copy of the marriage certificate between Ali Hizam and Wilaya Hamood Nagi Abdulla, as well as Ali Hizam's Certificate of Naturalization, U.S. Passport, and his affidavit of physical presence.  CRBA number ████ █████ was issued to you on February 18, 1990.

A review of the records reveals that, at the time of your birth, your father was a naturalized U.S. citizen.  There is no record that your mother ever naturalized. Section 301(g) of the United States Immigration and Nationality Act (INA) in effect during the relevant time period provided that a U.S. citizen married to an alien could transmit citizenship to his or her children born abroad, provided that he or she demonstrated ten (10) years of physical presence in the United States prior to the birth of the child, five years of which were after the age of fourteen (14).

You do not qualify for citizenship under INA § 301(g) as your father did not demonstrate ten (10) years of physical presence in the United States prior to your birth.  In the application for your CRBA, your father listed periods of physical presence in the United States prior to your birth totaling less than eight (8) years. Therefore, there is no evidence that you lawfully acquired U.S. citizenship.

In accordance with 22 C.F.R. § 50.2, you are requested to surrender and return immediately CRBA Number ▮▮▮▮▮▮▮▮ to our office at the following address:

Jonathan M. Rolbin, Director
Legal Affairs and Law Enforcement Liaison
Department of State, Passport Services
2100 Pennsylvania Ave, NW, 3rd Floor
Washington, DC 20037

Please be advised that you are entitled to a hearing under § 361 of the INA. This hearing would address the evidence presented upon which the CRBA was cancelled. Should you desire such a hearing, you must notify this office in writing within sixty (60) days of receipt of this notice. A request for a hearing does not serve to stay the revocation action taken by the Department of State.

Sincerely,

Jonathan M. Rolbin
Director
Legal Affairs and Law Enforcement Liaison

JMR/CK

2

**EXHIBIT D**



**United States Department of State**

*Washington, D.C.   20520*

April 28, 2011

Mr. Abdo Ali Yahya Hizam
███████████
Bronx, New York 10461

Dear Mr. Hizam:

The State Department hereby informs you that it has revoked U.S. Passport Number █████
issued to you on May 10, 2001, along with any other U.S. passports issued to you. This action is
taken in accordance with the provisions of § 51.62(b) of Title 22 of the U.S. Code of Federal
Regulations, which provide that a U.S. passport may be revoked when it has been determined
that the bearer is not a U.S. national.

The record shows that you were born on October ███ 1980 in Yemen. Your father became a
naturalized U.S. citizen on November 19, 1979, before your birth. There is no record that your
mother naturalized.

Your passport was issued based on the Immigration and Nationality Act (INA) § 301(g), which,
during the relevant time period, provided that a U.S. citizen married to an alien could transmit
citizenship to his or her children born abroad provided that he or she demonstrated ten (10) years
of physical presence in the United States prior to the birth of the child, five years of which were
after the age of fourteen (14).

You do not qualify for citizenship under INA § 301(g) as your father had not fulfilled the
transmission requirements to transmit U.S. citizenship to you prior to your birth. In the
application for your Consular Report of Birth Abroad (CRBA), your father listed his periods of
physical presence in the United States prior to your birth. These periods of time, taken together,
do not fulfill the ten (10) years requirement. As there is no evidence that you lawfully acquired
U.S. citizenship, you are not entitled to a U.S. passport.

In accordance with 22 C.F.R. §§ 51.7 and 51.66, the U.S. passport remains the property of the
U.S. Government, and must be surrendered upon demand. You are requested to surrender and
return immediately U.S. Passport Number ██████ and all U.S. passports in your possession
to our office at the following address:

Jonathan M. Rolbin, Director
Legal Affairs and Law Enforcement Liaison
Department of State, Passport Services
2100 Pennsylvania Ave, NW, 3rd Floor
Washington, DC 20037

Be advised that any further use of a U.S. passport is a violation of § 1544 of Title 18 of the U.S.
Code, which is a felony.

28

In closing, be advised that you are not entitled to a hearing under §§ 51.70 through 51.74 of the passport regulations in Title 22 of the Code of Federal Regulations. Title 22 § 51.70(b)(1) of the Code of Federal Regulations states that a hearing is not provided in a case of an adverse passport action taken on grounds of non-citizenship, such as in this case. However, if appropriate, you may seek to pursue an action in U.S. district court under 8 U.S.C. § 1503.

Please note that you may also re-apply for a U.S. passport if or when you can present evidence demonstrating a lawful claim to U.S. citizenship.

Sincerely,

Jonathan M. Rolbin
Director
Legal Affairs and Law Enforcement Liaison

JMR/CK

2