```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
ABDO HIZAM,                        :        11 Civ. 7693 (JCF)
                                   :
            Plaintiff,             :           MEMORANDUM
                                   :           AND ORDER
      - against -                  :
                                   :
HILLARY CLINTON, Secretary of      :
State, United States Department of :
State, UNITED STATES DEPARTMENT OF :
STATE,                             :
                                   :
            Defendants.            :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

Twenty-two years ago, the United States Department of State (the "State Department") deemed Abdo Hizam, who was then nine years old, a United States citizen and issued him a passport. Since that time, it has twice renewed his passport. Now, the State Department has cancelled the Consular Report of Birth Abroad of a Citizen of the United States ("CRBA") it issued to Mr. Hizam and has revoked his passport, contending that its original action was a mistake.

Mr. Hizam initiated this action pursuant to 8 U.S.C. § 1503 seeking a judgment declaring that he is a citizen of the United States and an order compelling the defendants to re-issue his passport and CRBA. He argues that although the State Department erroneously adjudicated his citizenship in the first instance, it lacks the statutory authority now to revoke the documents at issue.

In the alternative, he contends that the State Department should be barred from denying his citizenship on the basis of equitable estoppel and the doctrine of laches.  Both parties consented to my exercise of jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c), and each has moved for summary judgment.  For the reasons discussed below, the plaintiff's motion is granted and the defendants' motion is denied.

Background

Mr. Hizam was born in 1980 in Al Mahaqira, Yemen.  (Judgment Confirming Marriage and Birth ("Judgment"), attached as Exh. 1 to Declaration of Natasha Oeltjen dated April 13, 2012 ("Oeltjen Decl.").  At that time, his parents were married (Judgment), and his father, Ali Yahya Hizam, was a naturalized citizen of the United States.  (Naturalization Certificate of Ali Hizam, dated Nov. 19, 1979, attached as Exh. 2 to Oeltjen Decl.; Application for Report of Birth Abroad of a Citizen of the United States of America on behalf of Abdo Hizam ("CRBA Application"), attached as Exh. 3 to Oeltjen Decl.).  On February 18, 1990, Mr. Hizam's father applied for U.S. passports and CRBAs for his children at the United States Embassy in Sana'a, Yemen.  (CRBA Application).  Mr. Hizam's father provided a variety of information in support of the applications and truthfully indicated that he had spent seven years physically present in the United States at the time of Mr. Hizam's birth.

(CRBA Application). Even though the applicable derivative citizenship statute required the United States citizen parent to have lived in this country for ten years in order to transmit U.S. citizenship to his child, the consular officers issued a passport and CRBA to Mr. Hizam. (CRBA Application; Passport of Abdo Hizam, issued Feb. 18, 1990, attached as Exh. A-1 to Plaintiff's Motion for Summary Judgment ("Pl. Motion")).

Mr. Hizam first came to the United States in 1990. (Plaintiff's Rule 56.1 Statement of Material Facts in Support of Motion for Summary Judgment ("Pl. 56.1 Statement"), ¶ 15; Passport of Abdo Hizam issued Feb. 18, 1990, attached as Exh. A-1 to Pl. Motion; Declaration of Abdo Hizam dated March 22, 2012, attached as Exh. A to Pl. Motion ("Hizam Decl."), ¶ 8). He remained in this country thereafter, living with his grandparents. (Hizam Decl., ¶ 8). In 1995, the plaintiff's grandfather, who was his legal guardian pursuant to a power of attorney, applied for a renewed passport for Mr. Hizam. (Application for Passport Renewal dated Dec. 5, 1995, attached as Exh. E to Pl. Motion). The State Department issued the renewed passport on January 9, 1996. (Passport of Abdo Hizam, issued Jan. 9, 1996, attached as Exh. F to Pl. Motion). Mr. Hizam's passport was again renewed on May 10, 2001. (Passport of Abdo Hizam, issued May 10, 2001, attached as Exh. G to Pl. Motion).

Shortly thereafter, in May 2002, Mr. Hizam traveled to Yemen, where he married and had two children, both of whom currently reside there. (Pl. 56.1 Statement, ¶ 36; Hizam Decl., ¶ 23). At some point thereafter, Mr. Hizam returned to the United States. (Pl. 56.1 Statement, ¶ 36-37; Hizam Decl., ¶ 22-24).

In 2009, the plaintiff again traveled to Yemen to visit his wife and children. (Pl. 56.1 Statement, ¶ 41; Hizam Decl., ¶ 31). On January 24, 2009, he applied for CRBAs and passports for his two children at the U.S. Embassy in Sana'a, Yemen. (Pl. 56.1 Statement, ¶ 41, Hizam Decl., ¶ 31). Embassy employees suggested to Mr. Hizam that there was an unspecified issue with his passport and withheld it from him for approximately three weeks. (Pl. 56.1 Statement, ¶ 42; Hizam Decl., ¶¶ 32-33). In May 2009, the embassy returned Mr. Hizam's passport and instructed him to contact an attorney at the State Department upon his return to the United States. (Hizam Decl., ¶ 33). Due to his uncertainty regarding his status, Mr. Hizam has not traveled outside of the United States since his return from Yemen. (Pl. 56.1 Statement, ¶ 43; Hizam Decl., ¶ 34).

On April 18, 2011, the State Department informed Mr. Hizam by letter of its opinion that it had committed an error in calculating the physical presence requirement for his acquisition of citizenship at birth. (Pl. 56.1 Statement, ¶¶ 48-49; Letter of

4

Edward Betancourt dated April 18, 2011, attached as Exh. J to Pl. Motion). Subsequent letters informed Mr. Hizam that his CRBA had been canceled and his passport revoked and requested that he return those documents. (Letter of Jonathan M. Rolbin dated April 28, 2011, attached as Exh. K to Pl. Motion; Letter of Jonathan M. Rolbin dated April 28, 2011 attached Exh. L to Pl. Motion). He complied on May 19, 2011. (Pl. 56.1 Statement, ¶ 50; Hizam Decl., ¶ 38).

On October 28, 2011, the plaintiff filed the instant suit and both parties subsequently cross-moved for summary judgment. In his motion, Mr. Hizam argues (1) that the statute relied upon by the State Department to revoke his passport and CRBA, 8 U.S.C. § 1504, should be interpreted to apply only to citizenship documents obtained by fraud or error on the part of the applicant, and not to error by the agency, (2) that application of Section 1504 to him would give the statute an impermissible retroactive effect, (3) that the government should be equitably estopped from revoking his documents, and (4) that the principle of laches prevents the revocation of those documents. (Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment at 6-30). The government, in turn, argues that Mr. Hizam never acquired citizenship in the first instance, that the State Department has the authority to revoke erroneously issued citizenship documents independent of

Section 1504, and that citizenship may not be obtained by equity under any circumstances. (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Cross Motion for Summary Judgment ("Def. Memo.") at 7-20). It further points out that Mr. Hizam's passport has since expired and argues that the State Department could not now issue him a new passport because he is not actually a U.S. citizen. (Def. Memo. at 19-20 & n.8).

Discussion

    A. Jurisdiction

    Jurisdiction exists in this case by virtue of 8 U.S.C. § 1503(a), which states in relevant part:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 [the Declaratory Judgment statute] against the head of such department or independent agency for a judgment declaring him to be a national of the United States . . . .

8 U.S.C. § 1503(a). Section 1503(a) authorizes de novo determination of whether the plaintiff qualifies as a U.S. national. Patel v. Rice, 403 F. Supp. 2d 560, 562 (N.D. Tex. 2005) (citing Richards v. Secretary of State, 752 F.2d 1413, 1417 (9th Cir. 1985), and Delmore v. Brownell, 135 F. Supp. 470, 473 (D.N.J.

1955)).

B. <u>Summary Judgment Standard</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 285-86 (2d Cir. 2002) (citing former Rule 56(c)); <u>see also</u> <u>Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co.</u>, 189 F.3d 208, 214 (2d Cir. 1999).  The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The opposing party then must come forward with "specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 324 (internal quotation marks omitted).  Where the nonmovant fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted.  <u>Id.</u> at 322.

In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the

nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>Vann v. City of New York</u>, 72 F.3d 1040, 1048-49 (2d Cir. 1995).  But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative.  <u>Anderson</u>, 477 U.S at 249-50.  "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forth some affirmative indication that his version of relevant events is not fanciful." <u>Podell v. Citicorp Diners Club, Inc.</u>, 112 F.3d 98, 101 (2d Cir. 1997) (internal quotation marks omitted); <u>see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); <u>Goenaga v. March of Dimes Birth Defects Foundation</u>, 51 F.3d 14, 18 (2d Cir. 1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible").  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 288 (1968)).

Here, the parties do not appear to disagree with respect to any material facts.   Rather, their dispute turns on the legal significance of those facts.

C. Statutory Scheme Governing Passports and CRBAs

Congress has entrusted the State Department with "the administration and enforcement of the provisions of [the Immigration and Nationality Act] relating to . . . the determination of nationality of a person not in the United States." 8 U.S.C. § 1104(a)(3).  As the State Department concedes, Section 1104 does not authorize it to grant or revoke citizenship as such; rather, its authority is limited to determining an individual's nationality.  (Def. Memo. at 14 (citing 8 U.S.C. § 1104(a)(3)). Prior to the passage of Section 1504 in 1994, no statutory authority permitted the State Department to revisit such a determination and revoke a passport or cancel a CRBA.

Instead, since the passage of 22 U.S.C. § 2705 in 1956, the State Department has been required to treat CRBAs and valid passports as having "the same force and effect as proof of United States citizenship as certificates of naturalization or of citizenship issued by the Attorney General or by a court having naturalization jurisdiction." 22 U.S.C. § 2705.  Section 2705 has been interpreted to mean that, "assuming the Secretary [of State could] revoke a passport, he [could] do so only if he . . .

9

[sought] revocation on the basis of fraud, misrepresentation, or some other exceptional ground." Magnuson v. Baker, 911 F.2d 330, 334 (9th Cir. 1990); cf. Haig v. Agee 453 U.S. 280, 290-91 (1981) (holding that the Secretary of State may deny or revoke a passport for exceptional reasons, such as national security, "not specified in the statutes"). "[S]econd thoughts" about an individual's status as a U.S. citizen do not constitute such an exceptional ground because "if the Secretary could revoke a passport [or CRBA] on a whim" then Section 2705's command that passports and CRBAs be given "the same force and effect as proof of United States citizenship" as a certificate of citizenship would be nullified. Magnuson, 911 F.3d at 332, 334, 336 n.14; see 22 U.S.C. § 2705.

Congress granted the State Department express authority to cancel passports and CRBAs with the enactment of Section 1504, which states in relevant part that "[t]he Secretary of State is authorized to cancel any United States passport or Consular Report of Birth, or certified copy thereof, if it appears that such document was illegally, fraudulently, or erroneously obtained from, or was created through illegality or fraud practiced upon, the Secretary." 8 U.S.C. § 1504(a).[1]   The enactment of Section 1504

---

[1] Clearly, the "legal landscape regarding cancellation of passports has changed substantially" since the Ninth Circuit decided Magnuson. See Atem v. Ashcroft, 312 F. Supp. 2d 792, 799 (E.D. Va. 2004) (finding Magnuson superseded by Section 1504 to

expanded the circumstances under which a passport or CRBA could be canceled.   <u>See</u> Nationality Procedures -- Report of Birth Regulation; Passport Procedures -- Revocation or Restriction of Passports Regulation, 64 Fed. Reg. 19,713, 19,713 (April 22, 1999) (acknowledgement by State Department that "[Immigration and Nationality Technical Corrections Act of 1994 (the "INTCA")] added new grounds for denying, revoking, or canceling a passport, and for cancelling a [CRBA]").

    D. <u>Equitable Estoppel</u>

    Before addressing the State Department's authority to cancel Mr. Hizam's CRBA, it is necessary to resolve the government's claim that regardless of its authority to revoke Mr. Hizam's documents, no remedy whatsoever is available to him in federal court.   In their view, the fact that the State Department erroneously adjudicated Mr. Hizam's citizenship in the first instance means that he has never been a U.S. citizen, despite holding conclusive proof of that status for the past twenty-two years. As a result, they argue, any remedy that results in the reissuance of Mr. Hizam's CRBA would constitute naturalization by equity, an outcome

extent it held pre-revocation hearings required for State Department to revoke passport).   Nonetheless, because Mr. Hizam's CRBA was issued prior to the passage of Section 1504 and because, as discussed below, Section 1504 is non-retroactive, the Secretary of State's authority to revoke his documents remains constrained by the limits identified in <u>Magnuson</u>.

barred by unequivocal Supreme Court precedent.

The State Department is correct that federal courts may not order an alien naturalized by exercise of their equitable powers. Congress has clearly stated that "[a] person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this subchapter and not otherwise." 8 U.S.C. § 1421(d). The Supreme Court, in turn, has interpreted Section 1421(d) to mean that naturalized citizenship may be obtained solely "in strict compliance with the terms of [the] authorizing statute . . . . Neither by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means, does a court have power to confer citizenship in violation of these limitations." <u>Immigration and Naturalization Service v. Pangilinan</u>, 486 U.S. 875, 884-85 (1988); <u>see also</u> <u>Edwards v. INS</u>, 393 F.3d 299, 309 (2d Cir. 2004). Mr. Hizam does not, however, seek to be naturalized by court order. Rather, he seeks a declaratory judgment finding that the State Department exceeded its authority when it cancelled his CRBA and an order compelling its return.

E. <u>Retroactivity of Section 1504</u>

Because Mr. Hizam's CRBA was issued in 1990 and Section 1504 was not enacted until 1994, whether that section authorized the State Department's actions in this case depends on whether it is

retroactive.    There  is  a  long-established  presumption  against
retroactively  applying  new  legislation.    Landgraf  v.  USI  Film
Products,  511  U.S.  244,  265  (1994)  ("[T]he  presumption  against
retroactive  legislation  is  deeply  rooted  in  our  jurisprudence,  and
embodies  a  legal  doctrine  centuries  older  than  our  Republic."); INS
v.  St.  Cyr,  533  U.S.  289,  321-24  (2001)  (applying  presumption
against  retroactivity  to  protect  discretionary  relief  for  lawful
permanent  residents).    Determining  whether  a  statute  operates
retroactively  requires  a  two-step  analysis.    First,  a  court  must
assess  whether,  using  "ordinary  tools  of  statutory  construction,"
Congress  intended  the  statute  to  apply  to  events  prior  to  its
passage.    Herrera  Molina  v.  Holder,  597  F.3d  128,  133  (2d  Cir.
2010);  see  also  Landgraf,  511  U.S.  at  280.    Where  there  is
ambiguity  with  regard  to  whether  Congress  intended  a  statute  to  be
retroactive,  the  second  step  calls  for  a  determination  of  "whether
the  new  provision  attaches  new  legal  consequences  to  events
completed  before  its  enactment."    Id.  at  270.    If  it  does,
retroactivity  demands  a  clear  statement  of  Congressional  intent.
St.  Cyr,  533  U.S.  at  315-16,  325  n.55;  Landgraf,  511  U.S.  at  270.

    Here,  it  is  unclear  whether  Congress  intended  Section  1504  to
be  retroactive.    Congress  passed  it  as  part  of  Title  I  of  the
INTCA.    Where  Congress  intended  the  INTCA  to  apply  retroactively,
it  said  so  explicitly.    For  example,  8  U.S.C.  §  1401,  the  first

provision in Title I, includes a subsection mandating retroactive application. See Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 101, 108 Stat. 4305 (1994) ("RETROACTIVE APPLICATION. -- . . . [T]he immigration and nationality laws of the United States shall be applied (to persons born before, on, or after the date of the enactment of this Act) as though the amendment made by subsection (a), and subsection (b), had been in effect as of the date of their birth . . . ."); see also Henderson v. INS, 157 F.3d 106, 129-30 (2d Cir. 1998) ("Congress' use of explicitly retroactive language in that part of the bill, and its failure to employ any analogous language in the nearby and closely related [provision] by itself strongly indicates that Congress did not intend [the latter provision] to apply retroactively."). However, at least two sections of the INTCA expressly provide for non-retroactive application where Congress so intended: Title I, Sections 104 and 108, which removed a statutory provision requiring naturalized citizens to permanently reside in the U.S. and removed the English language requirement for certain longtime U.S. residents. See Immigration and Nationality Technical Corrections Act of 1994 §§ 104, 108. Thus, Congress' intent with respect to Section 1504, which contains no provision addressing retroactivity, is ambiguous.

The argument for retroactivity for Section 1504 instead fails

at the second step of the <u>Landgraf</u> analysis.[2]  That step requires a "commonsense, functional judgment about whether a new provision attaches new legal consequences to events completed before its enactment" that draws upon "familiar considerations of fair notice, reasonable reliance, and settled expectations."  <u>St. Cyr</u>, 533 U.S. at 321 (internal quotation marks omitted).  <u>Landgraf</u>'s requirement of a clear Congressional statement if retroactive application would create new legal consequences ensures that it occurs only where "Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness" inherent in retroactive application of a statute.  <u>Landgraf</u>, 511 U.S. at 268.

The common sense judgment called for by <u>St. Cyr</u> indicates that retroactive application of Section 1504 would undermine any consideration of fair notice to Mr. Hizam and upset long settled expectations.  When the State Department initially adjudicated Mr. Hizam's citizenship in 1990, no statute authorized the State Department to cancel a CRBA.  <u>See</u> Nationality Procedures -- Report of Birth Regulation; Passport Procedures -- Revocation or Restriction of Passports Regulation, 64 Fed. Reg. at 19,713 (acknowledgment by State Department that the "INTCA added new

---

[2] Because of this, there is no need to address the plaintiff's argument that Section 1504 extends only to mistakes by the applicant and not to agency error.

grounds for denying, revoking, or cancelling a passport and for cancelling a Consular Report of Birth."). Fully four years elapsed between Mr. Hizam obtaining his CRBA and the passage of the INTCA; thus it was impossible for him to have received any notice whatsoever that his CRBA could be revoked in the future.

Moreover, interpreting Section 1504 to permit its retroactive application would, as the plaintiff argues, upset the settled expectations of the entire class of persons who received CRBAs prior to the passage of the INTCA; these individuals are likely to have long ago taken steps associated with established residence in the United States, including starting families and paying into various government benefits systems. The possibility of the State Department revoking their CRBAs could cost them the benefit of such steps. Mr. Hizam's own circumstances make clear the potential for retroactivity to upset settled expectations; he has lived and worked in the United States for decades, paid into Social Security, and currently lives and works with his younger siblings, all of whom have obtained U.S. citizenship. (Hizam Decl., ¶ 2). Loss of his CRBA undermines the stability of all of these commitments.

It is therefore unsurprising that courts and Congress have repeatedly recognized the value of protecting citizenship status once it is bestowed or recognized. <u>See</u> <u>Schneiderman v. United States</u>, 320 U.S. 118, 122-23 (1943) ("[The consequences of

depriving an individual of citizenship are] more serious than a taking of one's property, or the imposition of a fine or other penalty."); 8 U.S.C. § 1481 (2006) (setting highly specific requirements for loss of nationality among native born and naturalized citizens); 8 U.S.C. § 1451 (2006) (stating the processes for denaturalization, including a mandatory hearing before a district court of the United States).

F. <u>Other Authority to Revoke Proof of Citizenship</u>

The government does not directly challenge the plaintiff's claim that Section 1504 is non-retroactive.  Rather, it argues that it is "beside the point" (Def. Memo. at 19) because the State Department has authority to verify an individual's citizenship status and deny or revoke citizenship documentation that is independent of and predates the passage of Section 1504.  (Def. Memo. at 17-20). Specifically, 8 U.S.C. 1104(a)(3) charges the Secretary of State with "the administration and enforcement of the provisions of [the INA] relating to . . . the determination of nationality of a person not in the United States."  8 U.S.C. 1104(a)(3).  In the government's view, "[t]his authority to determine an individual's citizenship necessarily encompasses the authority to determine that the individual is not a U.S. citizen," because "inherent in the authority to determine and verify citizenship is the authority to review and correct erroneous

17

determinations of U.S. citizenship." (Def. Memo. at 18).

In so arguing, the government necessarily asserts that the power to issue citizenship documents implies the power to revoke them. Regardless of whether the power to grant implies the power to revoke in other circumstances, both the statutory scheme governing immigration and the relevant case law demonstrate that in this context it does not. "[A]n agency may not confer power upon itself." Gorbach v. Reno, 219 F.3d 1087, 1092-93 (9th Cir. 2000). Specifically, there must be "some statutory authority to have the power to take away an individual's American citizenship," and as a result courts should begin their inquiry by "seeking in the relevant statutes some express or implied delegation of authority to . . . revoke . . . ." Id. at 1093 (requiring express statutory authority from Congress for the Attorney General to denaturalize citizens even if there is already authority to naturalize);[3] see also Magnuson, 911 F.2d at 334 (concluding that 22 U.S.C. § 2705 "grants no revocation power to the Secretary [of State] and certainly none greater than could be exercised by the Attorney

---

[3] This is not technically an attempt by the government to take away Mr. Hizam's citizenship, but the underlying point made by the court in Gorbach remains: with respect to citizenship-related documents, the power to revoke is independent of the power to grant. Furthermore, if this were not true for CRBAs and passports, Section 2705's mandate that those documents be treated as proof of citizenship would be rendered toothless.

General or a naturalization court."). Thus, the <u>Magnuson</u> court noted that although Section 2705 "vested the power in the Secretary of State to decide who is a United States citizen," it nonetheless "grant[ed] the [Secretary of State] no revocation power." <u>Magnuson</u>, 911 F.2d at 333, 334. Furthermore, the fact that Congress considered it necessary in 1956 to grant the Attorney General the express power to cancel certificates of citizenship indicates that it did not conceive of the power to grant citizenship-related documents as implying the power to revoke them. <u>See</u> 8 U.S.C. § 1453 ("The Attorney General is authorized to cancel any certificate of citizenship . . . if it shall appear to the Attorney General's satisfaction that such document or record was illegally or fraudulently obtained . . . .").

More broadly, the State Department's assertion of authority to revoke the plaintiff's passport and CRBA independent of Section 1504 is at odds with the basic rules of statutory interpretation. "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." <u>Hibbs v. Winn</u>, 542 U.S. 88, 101 (2004) (quoting 2A N. Singer, <u>Statutes and Statutory Construction</u> § 46.06, at 181-86 (rev. 6th ed. 2000)) (internal quotation marks and punctuation omitted); <u>see also</u> <u>United States v. Blasius</u>, 397 F.2d 203, 207 n.9 (2d Cir. 1968) ("There is a presumption against

19

construing a statute as containing superfluous or meaningless words or giving it a construction that would render it ineffective."). If Section 1104(a)(3) grants the State Department both the authority to determine citizenship status and to freely revisit its decisions based on second thoughts or the belief that it acted in error, Section 1504 would not "add[] new grounds for denying, revoking, or canceling a passport, and for cancelling a [CRBA]," as the defendants acknowledge it was intended to do. (Def. Memo. at 19).

G. <u>Nature of the Remedy</u>

Here, because Section 1504 is non-retroactive and because the State Department lacks any other authority to cancel a CRBA under these circumstances, an order requiring the agency to reissue Mr. Hizam's CRBA is not an order that he be naturalized. Rather, it is an order that the State Department comply with Section 2705, which barred the agency from re-opening its prior adjudication of Mr. Hizam's status or revoking his citizenship documents based on second thoughts. <u>See</u> <u>Magnuson</u>, 911 F.2d at 336 n.14 ("Because we have concluded that the Secretary's power to revoke a passport cannot be based on second thoughts about the citizenship determination, the existence of a factual dispute with respect to

[the plaintiff's] citizenship is irrelevant.").[4]   Finally, because Pangilinan addressed neither the issue of when or how the State Department may re-open prior adjudications of citizenship, nor the related issue of whether the State Department may disregard Section 2705 in the absence of authority under Section 1504 to do so, that case does not preclude relief here.

Conclusion

In the absence of authority for the State Department to revoke his documents, Mr. Hizam is entitled to the return of his CRBA. Moreover, under 22 U.S.C. § 2705, Mr. Hizam's CRBA "has the same force and effect as proof of United States citizenship" as would a certificate of citizenship, and he can presumably apply for and obtain a new passport on that basis.

Accordingly, the plaintiff's motion for summary judgment (Docket no. 12) is granted, and the defendants' motion (Docket no.

---

[4] In contrast to Magnuson, the parties here do not dispute that the State Department erred in its original adjudication. Nonetheless, with regard to Mr. Hizam, who was found to be a citizen prior to the enactment of Section 1504 and whose case presents no exceptional circumstance, the agency lacked the authority to review that error.   Thus here, as in Magnuson, the question of whether or not the original determination was in error is irrelevant; the State Department was legally barred from re-adjudicating Mr. Hizam's status in 2011 and cannot in the future deny it.   I need not determine at this time what circumstances might qualify as exceptional in other cases such that State Department would have authority, either by statute or as a matter of its residual power, to revoke proof of citizenship documents.

15) is denied.   The Clerk of Court shall enter judgment and close

this case.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       July 27, 2012

Copies mailed this date:

Nancy B. Morawetz, Esq.
Alina Das, Esq.
Semuteh Freeman, Legal Intern
Kevin Terry, Legal Intern
Washington Square Legal Services, Inc.
245 Sullivan Street
New York, NY 10012

Natasha Oeltjen, Esq.
Assistant United States Attorney
86 Chambers Street
New York, NY 10007

22