UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
ABDO HIZAM,                          :      11 Civ. 7693 (JCF)
                                     :
            Plaintiff,               :          MEMORANDUM
                                     :          AND  ORDER
      - against -                    :
                                     :
HILLARY CLINTON, Secretary of        :
State, United States Department of   :
State, UNITED STATES DEPARTMENT OF   :
STATE and THE UNITED STATES OF       :
AMERICA,                             :
                                     :
            Defendants.              :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     Plaintiff Abdo Hizam brought this action against defendants
Hillary Clinton, the United States Department of State, and the
United States of America (collectively the "State Department")
seeking a judgment declaring that he is a citizen of the United
States and an order compelling the defendants to re-issue his
Consular Report of Birth Abroad for a Citizen of the United States
("CRBA") and passport.  (Memorandum Opinion and Order dated July
27, 2012 ("July 27 Order") at 1).  The parties consented to my
exercise of jurisdiction for all purposes, and on July 27, 2012, I
granted Mr. Hizam's motion for summary judgment and denied the
State Department's cross-motion for summary judgment.  (July 27
Order at 2).

     On August 21, 2012, the State Department filed a motion

requesting that I stay the July 27 Order while it considers whether to appeal, and if an appeal is filed, extend the stay pending resolution of that appeal. (Memorandum of Law in Support of Defendants' Motion for Stay Pending Consideration of Appeal ("Def. Stay Memo.") at 1, 13). Mr. Hizam opposes the application. (Memorandum in Opposition to Defendant's Motion for a Stay Pending Expiration of the Time for Filing a Notice of Appeal and Pending Appeal Should a Notice of Appeal Be Filed ("Pl. Stay Memo.")).

For the reasons that follow, the State Department's motion is denied.

Background

The facts of the case are set out in the July 27 Order, with which I assume familiarity. Nevertheless, some background will be helpful in understanding the following discussion.

Mr. Hizam was born in 1980 in Al Mahaqira, Yemen. (July 27 Order at 2). At that time, his parents were married, and his father was a naturalized citizen of the United States. (July 27 Order at 2). In 1990, Mr. Hizam's father applied for United States passports and CRBAs for his children at the United States Embassy in Sana'a, Yemen and the consular officers issued a CRBA and passport to Mr. Hizam. (July 27 Order at 2-3).

Mr. Hizam first came to the United States in 1990 and remained in this country thereafter. (July 27 Order at 3). In 1996 and

2

again in 2001, the State Department renewed Mr. Hizam's passport. (July 27 Order at 3).

In May 2002, Mr. Hizam traveled to Yemen where he married and had two children, both of whom currently reside there. (July 27 Order at 4). In 2009, while Mr. Hizam was in Yemen visiting his wife and children, he applied for CRBAs and passports for his two children at the United States Embassy in Sana'a, Yemen. (July 27 Order at 4). Embassy employees suggested to Mr. Hizam that there was an unspecified issue with his passport and instructed him to contact the State Department upon his return to the United States. (July 27 Order at 4).

On April 18, 2011, the State Department informed Mr. Hizam by letter of its opinion that it had committed an error in calculating the physical presence requirement for his acquisition of citizenship at birth. (July 27 Order at 4). Subsequently, the State Department informed Mr. Hizam that his CRBA had been canceled and his passport revoked and requested the return of those documents. (July 27 Order at 5). On May 19, 2011, he complied. (July 27 Order at 5).

On October 28, 2011, Mr. Hizam filed the instant suit and both parties subsequently cross-moved for summary judgment. (July 27 Order at 5). In the July 27 Order, I held, first, that prior to the passage of 8 U.S.C. § 1504 in 1994, no statutory authority

3

permitted the State Department to revisit an individual's nationality determination and revoke a passport or cancel a CRBA. (July 27 Order at 9). Rather, prior to the enactment of Section 1504, the only grounds for revoking a passport were on the basis of fraud, misrepresentation, or some other exceptional reasons such as national security. (July 27 Order at 9-10). Second, I held that Section 1504 may not be applied retroactively because it would "upset the settled expectations of the entire class of persons who received CRBAs prior to the passage of [Section 1504]." (July 27 Order at 16). Therefore, permitting retroactive application of Section 1504 would be inconsistent with the second prong of the analysis required by Landgraf v. USI Film Products, 511 U.S. 244 (1994). (July 27 Order at 14-15). Third, I found that the State Department had no other authority to revoke proof of Mr. Hizam's citizenship. (July 27 Order at 18-20). Therefore, I held that in absence of authority for the State Department to revoke Mr. Hizam's citizenship documents, he is entitled to the return of his CRBA and could presumably apply for and obtain a new passport. (July 27 Order at 21).

Discussion

    A.   Authority to Issue a Stay

The State Department has requested a stay of the July 27 Order pending its decision whether to appeal and, if an appeal is taken,

pending resolution of that appeal.[1]   (Def. Stay Memo. at 1, 13).
Mr. Hizam argues that Rule 62 of the Federal Rules of Civil
Procedure provides no basis for obtaining a stay while the State
Department decides whether to appeal.  (Pl. Stay Memo. at 2).

The Supreme Court has described the federal court's power to
issue a stay as "inherent," part of a court's "traditional
equipment for the administration of justice," and "a power as old
as the judicial system of the nation." Nken v. Holder, 556 U.S.
418, 426-27 (2009) (internal quotation marks omitted).  While Rule
62 outlines the mechanism for how a stay may be obtained while an
appeal is pending, it does not limit the district court's inherent
power to issue a stay in a manner that does not fall within the
scope of the Rule.  See e.g., Marcoux v. Farm Service and Supplies,
Inc., 290 F. Supp. 2d 457, 485 (S.D.N.Y. 2003) ("Whether to grant
a stay without a supersedeas bond is a matter that remains within
this Court's sound discretion."); see also Federal Prescription
Service, Inc. v. American Pharmaceutical Association, 636 F.2d 755,
760-61 (D.C. Cir. 1980) (holding Rule 62(d) does not limit district
court's power to issue unsecured stays through exercise of its
sound discretion); Alexander v. Chesapeake, Potomac and Tidewater

---

[1] The State Department requests an initial stay of 60 days to
accord with the time Congress has provided the Government to
consider whether to appeal.  (Def. Stay Memo. at 13; 28 U.S.C. §
2107(b); Fed. R. App. P. 4(a)(1)(B)).

Books, Inc., 190 F.R.D. 190, 192 (E.D. Va. 1999) (Rule 62(d) "leaves unimpaired a district court's inherent, discretionary power to stay judgments pending appeal on terms other than a full supersedeas bond."). Thus, courts have stayed their orders even when an appeal is not yet pending. See National Immigration Project of the National Lawyers Guild v. United States Department of Homeland Security, 842 F. Supp. 2d 720, 731, 733 (S.D.N.Y. 2012) (granting government's motion for 60-day stay while it considered whether to appeal); United States ex rel. Carson v. Taylor, 403 F. Supp. 747, 757 (S.D.N.Y. 1975) (considering government's request for 30-day stay while government decided whether to appeal); see also Mocanu v. Mueller, Nos. 07-0445, 07-3223, 07-2718, 07-2859, 2008 WL 570953, at *1 (E.D. Pa. Feb. 28, 2008) (addressing merits of government's motion for stay while government decided whether to appeal); but see United States v. One 1962 Ford Galaxie Sedan, 41 F.R.D. 156, 157-78 (S.D.N.Y. 1966) (finding no power to grant stay absent notice of appeal). Therefore, I will entertain the merits of the State Department's motion.

   B.   Merits of the Stay Application

   "A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and [t]he propriety of its issue is dependent upon the circumstances of the particular case." Nken, 556 U.S. at 433

6

(alteration in original) (internal quotation marks and citation omitted).  In deciding whether to issue a stay, a court considers four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Id. at 434 (internal quotation marks omitted).  "The first two factors . . . are the most critical," id., and these factors have typically been evaluated on a sliding scale, so that a strong showing that the applicant is likely to succeed on the merits excuses a weaker showing of irreparable injury.  See Mohammed v. Reno, 309 F.3d 95, 101 (2d Cir. 2002).  Nevertheless, the Supreme Court has recently emphasized that the applicant must demonstrate that both factors are satisfied, so that even if a party makes a robust showing that it is likely to succeed on appeal, it still must also show that "irreparable injury is likely."  Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008) (emphasis omitted).[2]  "The party seeking the stay bears a heavy

---

[2] Winter dealt with the showing required for the issuance of a preliminary injunction rather than for a stay pending appeal. However, the test for a stay "is essentially the same" as the test for a preliminary injunction.  Citizens for Responsibility and Ethics in Washington v. Office of Administration, 593 F. Supp. 2d 156, 159 n.1 (D.D.C. 2009)(internal quotation marks omitted); see also Nken, 556 U.S. at 434 ("There is substantial overlap between

burden to establish[] a favorable balance of these factors." National Resources Defense Council v. United States Food and Drug Administration, ___ F. Supp. 2d ___, 2012 WL 3229296, at *10 (S.D.N.Y. Aug. 8, 2012) (alteration in original) (internal quotation marks omitted); see Shays v. Federal Election Commission, 340 F. Supp. 2d 39, 41 (D.D.C. 2004) (noting "standards required to justify the extraordinary remedy of a stay" are "stringent").

    1. Likelihood of Success on the Merits

   Although the oft-repeated standard indicates that an applicant must "ma[ke] a strong showing that he is likely to succeed on the merits," Hilton v. Braunskill, 481 U.S. 770, 776 (1987), if "a serious legal question is involved," a stay may issue when the movant "present[s] a substantial case on the merits . . . and show[s] that the balance of the equities weighs heavily in favor of granting the stay." LaRouche v. Kezer, 20 F.3d 68, 72-73 (2d Cir. 1994); see also Sutherland v. Ernst & Young LLP, ___ F. Supp. 2d ___, 2012 WL 751970, at *1 (S.D.N.Y. March 6, 2012); cf. Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 38 (2d Cir. 2010) (holding, in preliminary injunction

_____

[the stay] factors and the factors governing preliminary injunction[.]"). Winter's clarification of the standard, therefore, applies to stay applications. Consequently, cases discussing the factors a court must weigh in deciding a preliminary injunction motion are helpful in analyzing this stay application.

context, <u>Winter</u> does not foreclose "flexible standard" of "assessing a movant's likelihood of success on the merits").

    a.   <u>Inherent Authority to Revoke</u>

The State Department first argues, as it did in its motion for summary judgment, that it has authority to revoke erroneously issued citizenship documents independent of 8 U.S.C. § 1504. (Def. Stay Memo. at 2-6). The July 27 Order considered and rejected this argument. (July 27 Order at 17-20); <u>see</u> <u>Schwartz v. Dolan</u>, 159 F.R.D. 380, 384 (N.D.N.Y. 1995) ("Mere repetition of arguments previously considered and rejected cannot be characterized as a 'strong showing' [of likelihood of success on the merits]."); <u>see also</u> <u>International Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.</u>, No. 05 Civ. 2745, 2006 WL 1116437, at *3-4 (S.D.N.Y. April 26, 2006) (holding applicant failed to show likelihood of success on merits when it presented only arguments that court had already rejected); <u>Shays</u>, 340 F. Supp. 2d at 45-47 (same).

The State Department claims that the July 27 Order rejecting this argument conflicts with <u>Haig v. Agee</u>, 453 U.S. 280 (1981). (Def. Stay Memo. at 2-6). The State Department argues that <u>Agee</u> held that the Secretary of State has authority to deny or revoke a passport for reasons not expressly authorized in the Passport Act of 1926. (Def. Stay Memo. at 2). While this may be technically

correct, it does not aid the State Department. In Agee, the Supreme Court found that although the text of the Passport Act did not provide the Secretary of State the authority to deny or revoke passports, 453 U.S. at 290, the Secretary did have the authority to do so for serious national security and foreign policy reasons. Id. at 306. This authority stems from the Secretary's "consistent administrative construction of [the Passport Act of 1926] . . . especially [] in the areas of foreign policy and national security, where congressional silence is not to be equated with congressional disapproval." Id. at 291. The Court surveyed the history of passport control and concluded there is "since the earliest days of the Republic [] congressional recognition of Executive authority to withhold passports on the basis of substantial reasons of national security and foreign policy," id. at 293, and that such a policy was consistently enforced, id. at 303. Therefore, the Court held that this policy was "sufficiently substantial and consistent" to compel the conclusion that Congress had approved it. Id. at 306 (internal quotation marks omitted).

In this case, the State Department has not made a similar showing of a consistent administrative construction of a policy to revoke erroneously issued CRBAs and passports. The State Department has not identified any regulations in effect at the time Mr. Hizam received his CRBA that provided for revocation based on

10

mere agency error.  (Pl. Stay Memo. at 6).  The State Department now cites Magnuson v. Baker, 911 F.2d 330 (9th Cir. 1990), as evidence of its policy of revoking erroneously issued passports. (Def. Stay Memo. at 5-6).  However, a single example of revocation, subsequently invalidated, is insufficient to show a consistent administrative policy.

The State Department also contends that Weinstein v. Albright, 261 F.3d 127 (2d Cir. 2001), "re-affirmed the authority of the Secretary of State to revoke passports even where the revocation is not expressly authorized by statute." (Def. Stay Memo. at 4). Weinstein concerned the statutory delegation of discretionary power to the Secretary of State to revoke passports for those certified as being in arrears in child support.  261 F.3d at 133.  There, the court cited Agee for the principle that the Secretary should be granted broader latitude in creating a policy for passport revocation when it is acting pursuant to a statutory delegation of discretionary power than when it is acting pursuant to a non-statutory power as in Agee.   261 F.3d at 139.   Therefore, Weinstein's discussion of Agee does not support the State Department's contention here because the power to revoke erroneously issued passport was neither expressly authorized by statute nor a consistently followed and enforced policy at the time Mr. Hizam was issued his CRBA.

b.   <u>Retroactive Application of Section 1504</u>

The State Department's second argument -- that Section 1504 may operate retroactively because it does not affect a "vested right" (Def. Stay Memo. at 7-8) -- was expressly abandoned in its motion for summary judgment. (Pl. Stay Memo. at 4; July 27 Order at 17; Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgement and in Support of Defendants' Cross Motion for Summary Judgment at 19).   Accordingly, the State Department has not shown a likelihood that the Second Circuit will reach the merits of this argument. <u>See</u> <u>In re Nortel Networks Corp.</u> <u>Securities Litigation</u>, 539 F.3d 129, 133 (2d Cir. 2008) ("[T]he circumstances normally do not militate in favor of an exercise of discretion to address . . . new arguments on appeal where those arguments were available to the [parties] below and they proffer no reason for their failure to raise the arguments below." (alteration in original) (internal quotation marks omitted)).

Even if the Second Circuit were to entertain it, this contention is flawed. The State Department argues that Mr. Hizam has no "vested right" in retaining an erroneously issued Government document and that in other circumstances the Government is permitted to fix mistakes retroactively. (Def. Stay Memo. at 7-8). The retroactive effect of a statute is measured by a "commonsense" judgment about whether a new provision attaches new legal

consequences to events completed in the past drawing on "familiar considerations of fair notice, reasonable reliance, and settled expectations." INS v. St. Cyr, 533 U.S. 289, 321 (2001) (internal quotation marks omitted).   As discussed in the July 27 Order, permitting the retroactive application of Section 1504 would "upset the settled expectations of the entire class of persons who received CRBAs prior to the passage of [Section 1504]."  (July 27 Order at 16).

Nevertheless, neither party denies that this case involves serious legal questions regarding the authority of the State Department to revoke erroneously-issued citizenship documentation independent of Section 1504 and the retroactive application of Section 1504. See Schwartz, 159 F.R.D. at 384 (noting some courts apply "serious legal issue" test as alternative to evaluating likelihood their decisions would be overturned on appeal).  The Second Circuit has not directly addressed either of these questions.  See National Immigration Project, 842 F. Supp. 2d at 733 ("[W]here the district court has had to address issues as to which the appellate courts have provided little direct guidance, the likelihood that an appellate court will take a different approach increases.").  Moreover, the appeal will likely present only questions of law, which the Second Circuit will review without deference.  Although the State Department may not have made a

strong showing of likelihood of success on appeal, its arguments
are far from frivolous.  Therefore, the success of its application
depends on whether the State Department can "show that the balance
of the equities weighs heavily in favor of granting the stay."
LaRouche, 20 F.3d at 72-73 (internal quotation marks omitted).

      2.   Irreparable Injury

    To support a stay, the applicant must show "'an injury that is
neither remote nor speculative, but actual and imminent,' and 'one
that that cannot be remedied' if the party seeking the stay is
granted relief on appeal."  United States ex rel. Anti-
Discrimination Center of Metro New York, Inc. v. Westchester
County, New York, No. 06 Civ. 2860, 2012 WL 1758109, at *3
(S.D.N.Y. May 17, 2012) (quoting Grand River Enterprise Six
Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007)).  The
potential for irreparable injury should be evaluated taking into
account the possibility that the ruling sought to be stayed is
erroneous.  See National Immigration Project, 842 F. Supp. 2d at
733 ("Thus, failure to stay the disclosure required by the Order
would cause the Government irreparable injury if the ruling [were]
erroneous.").

    The State Department claims it will suffer irreparable injury
if a stay is not granted because it will be required to issue a
CRBA and, presumably, a passport, to an individual who "even the

14

Court recognizes is not a citizen or national of the United States"
and is thereby ordered to violate the law. (Def. Stay Memo. at 11-
12). This argument is premised on a misunderstanding of the July
27 Order. In that order, I found that the State Department lacked
authority to revoke Mr. Hizam's CRBA, and ordered its return.
(July 27 Order at 21). Since Mr. Hizam's CRBA is conclusive proof
of citizenship under 22 U.S.C. § 2705, it binds the State
Department as to Mr. Hizam's citizenship status. (July 27 Order at
21). Therefore, if Mr. Hizam were to apply for and obtain a new
passport, the State Department is not being required to violate the
law because Mr. Hizam would be able to establish his citizenship
through his CRBA. Moreover, this alleged harm is hardly
irreparable and can be easily remedied if the State Department were
to file an appeal and win. If the Second Circuit were to find that
the State Department has the authority to revoke Mr. Hizam's
citizenship documents, then the State Department can do so. There
is no reason to believe that Mr. Hizam would not comply with such
a decision, as he has demonstrated his willingness to comply with
a revocation directive in the past. (July 27 Order at 5; Pl. Stay
Memo. at 8).

The State Department also contends that absent a stay it will
suffer irreparable injury because the July 27 Order undermines its
"sole discretion" to withhold passports. (Def. Stay Memo. at 11).

15

This is simply a restatement of its disagreement with the July 27 Order.  The July 27 Order found that the State Department did not have the authority to revoke Mr. Hizam's citizenship documents and ordered the return of Mr. Hizam's CRBA.  (July 27 Order at 21).  Being required to comply with a court order is insufficient in and of itself to constitute irreparable harm.  See National Resources Defense Council, ___ F. Supp. 2d at ___, 2012 WL 3229296, at *12 ("[A]ccepting the Government's argument would almost always result in a finding of irreparable harm whenever an agency was required to comply with a court order.  As a consequence stays pending appeal would become routine, conflicting with the rule that such relief should be 'extraordinary.'" (internal citation omitted)).

     In short, the State Department has not shown that it will be irreparably harmed if a stay is not granted.

          3.   Injury to the Plaintiff

     The State Department acknowledges that if a stay is issued, Mr. Hizam faces hardship from his inability to travel.  (Def. Stay Memo. at 13).  Mr. Hizam has a wife and two young children who live in Yemen and whom he has not seen in over three years.  (Declaration of Abdo Ali Hizam dated Aug. 24, 2012 ("Hizam Decl."), attached as Exhibit 1 to Pl. Stay Memo., ¶ 4; Pl. Stay Memo. at 8).  "Loss of the ability to travel abroad is itself a harsh penalty, made all the more devastating if it means enduring separation from

close family members living abroad." <u>Vartelas v. Holder</u>, __ U.S.
__, 132 S. Ct. 1479, 1488 (2012) (footnote omitted).  An appeal
takes time and if the State Department were to decide to appeal,
Mr. Hizam could face a year or more without the ability to travel
abroad and see his family.  (Pl. Stay Memo. at 8).

Mr. Hizam also contends that without his CRBA he is unable to
offer potential employers the necessary documentation to establish
his eligibility to work in the United States.  (Hizam Decl., ¶ 9;
Pl. Stay Memo. at 9).  Under federal regulations, employers are
required to document proof of citizenship or authorization to work
in the United States for every employee they hire.  (Pl. Stay Memo.
at 9).  This is of immediate concern, as Mr. Hizam is currently
seeking employment.  (Hizam Decl., ¶ 9; Pl. Stay Memo. at 9).  If
a stay is issued, Mr. Hizam may face unemployment until an appeal
is filed and resolved.

It is clear, then, that Mr. Hizam is at risk of substantial
harm if a stay is imposed.

### 4.  Public Interest

The State Department claims a stay is in the public interest
because Mr. Hizam may seek derivative status for his wife and
children which would permit them to travel to the United States
ahead of relatives of legal permanent residents who have been
waiting for immigration visas for years.  (Def. Stay Memo. at 12).

If the State Department were later to win on appeal, Mr. Hizam's family could face the unfortunate circumstances of having detrimentally relied on Mr. Hizam's CRBA only to be deported. (Def. Stay Memo. at 13). Mr. Hizam asserts that he is not in a position now to bring his wife and children to the United States. (Hizam Decl., ¶ 6; Pl. Stay Memo. at 8). While the State Department raises valid concerns, they can be addressed without granting a stay, as will be discussed below.

On the other hand, there is a broad public interest in the State Department following the law. Jolly v. Coughlin, 907 F. Supp. 63, 65 (S.D.N.Y. 1995) (noting the "strong public interest in following the law"). In addition, arguably, there is a public interest in Mr. Hizam finding employment, for which he requires the documentation that have been revoked by the State Department. Therefore, the public interest favors denying a stay.

C. Relief

It is clear that the State Department has not met its heavy burden of "establishing a favorable balance of [the four stay] factors." Barcia v. Sitkin, No. 79 Civ. 5831, 2004 WL 691390, at *1 (S.D.N.Y. March 31, 2004). Indeed, given the substantial harm that further delay in complying with the July 27 Order could have on Mr. Hizam, the balance of equities would not "weigh heavily in favor" of a stay even if the State Department had shown a

18

substantial case on the merits.   LaRouche, 20 F.3d at 72-73.
Therefore, the State Department's request is denied.

However, a denial of a stay need not be unconditional.   See
e.g., Statharos v. New York City Taxi and Limousine Commission, 198
F.3d 317, 320 (2d Cir. 1999) (noting court had denied stay pending
appeal on certain conditions).   The State Department raises a
legitimate concern about Mr. Hizam's wife and children obtaining
derivative status through Mr. Hizam and coming to the United
States, only to be later removed if the July 27 Order is overturned
on appeal.   To avert this situation, the denial of a stay is
conditioned on Mr. Hizam not seeking derivative status for his
family members until an appeal, if lodged, is resolved.   This would
also alleviate the State Department's concern about Mr. Hizam's
family being processed for citizenship ahead of other qualified
applicants, only to be later deported.

Conclusion

For the foregoing reasons, the defendants' motion for a stay
pending consideration of appeal and, if an appeal is filed, pending
resolution of that appeal (Docket No. 27), is denied on the
condition that the plaintiff does not seek derivative status for
his family members until an appeal, if filed, is resolved.   If an
appeal is not filed, this condition dissolves on the day after the
final day on which the State Department may file a notice of

appeal.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           September 20, 2012

Copies mailed this date:

Nancy B. Morawetz, Esq.
Alina Das, Esq.
Semuteh Freeman, Legal Intern
Kevin Terry, Legal Intern
Washington Square Legal Services, Inc.
245 Sullivan Street
New York, NY 10012

David Bober, Esq.
U.S. Attorney's Office, SDNY
86 Chambers Street
New York, NY 10007